104 N.J. Super. 410 (1968)
250 A.2d 158
CHARLES F. WILLIS AND ALLSTATE INSURANCE COMPANY, PLAINTIFFS,
v.
SECURITY INSURANCE GROUP, DEFENDANT.
Superior Court of New Jersey, Chancery Division.
Decided January 19, 1968.
*411 Mr. Michael Patrick King for plaintiffs (Messrs. Kisselman, Devine, Deighan & Montano, attorneys).
Mr. Michael A. Orlando for defendant (Messrs. Orlando & Cummins, attorneys).
WICK, J.S.C.
This is a declaratory judgment action brought by Charles F. Willis and his carrier Allstate Insurance Company for a declaration of the rights of the parties relating to certain automobile liability policies. The facts are as set forth below.
This dispute arises out of an automobile accident occurring on August 31, 1964 on Nicholson Road in the Borough of Audubon. The vehicle, a 1964 Ford, operated by Willis, was owned by Ruffu Ford, Inc., an Atlantic City automobile dealer. The vehicle carried Ruffu Ford, Inc.'s dealer's tags and Willis was operating it with the permission of Robert W. White, the general sales manager of Ruffu Ford. At the time of the accident there were two liability policies in effect. Allstate had issued a "Crusader" policy which was a standard $10,000/20,000 automobile liability policy in favor of Willis. This policy covered, among other things, all cars owned by Willis and driven by him or by anyone with his *412 permission. It also extended coverage to Willis' driving of "non-owned" vehicles. However, if there was other insurance available with respect to nonowned vehicles, Allstate's policy was to be only "excess insurance" over any other collectible amounts. Allstate contends that the garage liability policy issued by Security in favor of Ruffu is available to protect Willis and therefore Allstate's coverage in this situation is excess only. The Security policy in Endorsement No. 4 specifically excludes from its omnibus clause individuals driving the insured's car with his permission where such persons have available valid and collectible insurance under their own policies with the minimum limits of $10,000/20,000. Security therefore contends that since Willis' policy with Allstate covered nonowned vehicles, it was not responsible for coverage in the accident of August 31, 1964.
It is the contention of Allstate Insurance Co. that the limitation in defendant's omnibus clause, as set forth above, is void as against the policy of this State in regard to the financial responsibility laws for automobile owners and drivers. In the alternative, Allstate contends that even if this clause is valid, Security is liable under its policy because Willis' use of the Ruffu automobile was "in the automobile business," a use specifically excluded from coverage by Allstate's policy, thus negating the condition for non-liability under the Security policy, namely, availability of valid collectible insurance under the driver's own policy.
Since a determination of whether or not Willis was operating the Ruffu automobile "in the automobile business" may obviate the necessity of delving into the validity or non-validity of defendant's Endorsement No. 4, the Court will make that determination first.
The stipulated facts and depositions indicate that the vehicle in question was being used as a demonstrator at the time of the accident. Allstate contends that such use was a "use in the automobile business by the insured" and therefore specifically excluded from coverage by the policy. If that exclusion applies to Willis in this situation, Security would *413 be liable whether Endorsement No. 4 is valid or not. Plaintiff Allstate cites the case of LeFelt v. Nasarow, 71 N.J. Super. 538 (Super. Ct. 1962), affirmed per curiam 76 N.J. Super. 576 (App. Div. 1962), certiorari denied LeFelt v. Aetna Insurance Company, 39 N.J. 86 (1963), in support of its position. That case involved the use of a vehicle in the process of being repaired by a part-time repairman on a test run by the repairman to determine whether the car was roadworthy. It was during this test run that the car was involved in an accident. In holding that the use was not "in an automobile business" within the meaning of an exclusion identical to that in the instant case, the court heavily relied upon the Washington case of McCree v. Jenning, 55 Wash.2d 725, 349 P.2d 1071 (Sup. Ct. 1960). The McCree case considered in detail the precise meaning of the exclusionary language and was acknowledged as strongly authoritative by the New Jersey court. The court in that case stated:
"It would appear evident, therefore, that an automobile `used in the automobile business,' would be one which was employed for some purpose in connection with that business. For example, * * * an automobile used for demonstration purposes, * * * would be `used in the business'."
All state contends that this statement clearly fits the situation in the case at bar and that it is therefore not liable. The court interprets the McCree statement to be inapplicable to the facts at hand. The specific language of the exclusionary clause in the instant case states that the insured is not covered when driving a "non-owned automobile while used in an automobile business by the insured." The insured here was not using the demonstrator in an automobile business. He was merely making use of a car furnished to him by someone using it in the automobile business. It goes without saying that Willis would have been covered were he driving an automobile borrowed from a friend. For all practical purposes, use of a demonstrator amounts to nothing more than *414 borrowing the car from a dealer rather than a friend. Can there be any valid justification for distinguishing between the two so far as coverage is concerned? The court thinks not. Certainly, the insurance risk would be no different in either case. At the same time, it stands to reason that the purpose of having an "automobile business" exclusion is to protect the company against the greater risks involved in that business than in normal everyday use of a car.
The court is aware of the Florida case of Hodapp v. Shelby Mutual Ins. Co., 166 So.2d 772 (App. Ct. 1964), which holds that the prospective purchaser driving a demonstrator is using it in the automobile business. However, it is the court's opinion that the better reasoning is to the contrary. The true meaning of the exclusionary clause is that it would exclude a dealer or the agent of a dealer if they were insured under the Allstate policy while driving nonowned vehicles in the operation of their business, but it would not exclude a prospective purchaser who is, in effect, operating it for his own benefit.
Having reached this conclusion it becomes necessary to determine the validity of the Endorsement No. 4 of Security's policy. For if this endorsement is valid, Allstate must be primarily liable for the accident in question should Willis be found negligent in that cause. Allstate claims that since Endorsement No. 4 limits coverage under the omnibus clause of the policy to persons driving the insured's autos with his permission who do not have insurance coverage of their own, this clause is void as against the public policy of this State. In support of this position Allstate cites the recent case of Selected Risks Insurance Company v. Zullo, 48 N.J. 362 (1966). In that case an insurance company attempted to limit coverage under its omnibus clause such that persons who drove an insured's car with his permission were protected only if they deviated in no way from the scope of that permission. After discussing the history of the Financial Responsibility Law requiring that persons registering their automobiles must prove financial *415 responsibility either in the form of insurance or by paying an additional registration fee, the Supreme Court of this State decided that the policy behind this law was to be assured of "having financially responsible persons available to meet the claims of persons wrongfully injured in automobile accidents" (at p. 371). Limiting an omnibus clause which in any way obstructed this policy would be declared invalid.
Were this as far as the court went in Zullo, the limitation of coverage under the omnibus clause in the instant case might well be upheld. For a ruling in favor of Security would in no way deprive persons wrongfully injured from having "financially responsible persons available," nor would they go uncompensated. Indeed, Security's omnibus clause only disclaimed coverage if the permitted driver was covered under his own policy, and then only to the limits of that coverage. However, in ruling that the limited omnibus clause in Zullo was invalid, the court went much further than a mere statement of policy. It emphasized the point that this policy dictated that "there may be no departure from the omnibus coverage described in section 46 of the Security-Responsibility Act, * * *." (at p. 374)
The court further stated:
"A policy * * * must have the broad form omnibus coverage set forth in N.J.S.A. 39:6-46(a). A policy which purports to have a more restrictive omnibus coverage is automatically amended to conform to the statutory standard." (at p. 373)
N.J.S.A. 39:6-46(a) specifically requires that a policy shall "insure the insured named therein and any other person using or responsible for the use of any such motor vehicle with the express or implied consent of the insured, * * *." (Emphasis supplied)
In light of the foregoing facts and circumstances the court has no alternative then but to hold Endorsement No. 4 invalid and to rule that Security Insurance Company is primarily liable under the policy issued by it to Ruffu Ford.