167 N.J. Super. 335 (1979)
400 A.2d 862
HARTFORD ACCIDENT & INDEMNITY COMPANY, PLAINTIFF,
v.
TRAVELERS INSURANCE COMPANY, DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided March 9, 1979.
*336 Mr. Eugene M. Purcell for plaintiff (Messrs. Purcell, Ries & Shannon, attorneys).
Mr. James D. Butler for defendant.
MARGOLIS, J.S.C.
The court is here presented with a question of novel impression in this State concerning coverage, if any, afforded under an automobile insurance policy by reason of an accident involving a tow truck, which was towing an oil truck, and which tow truck was in a collision with a third vehicle.
The primary issue is whether the act of towing a vehicle is a "use" of the towed vehicle within the meaning of the policy insuring the towed vehicle, thereby making the operator of the tow truck an "insured" under the towed vehicle's policy. Corollary to this threshold determination is *337 the validity of an exclusionary clause which purports to exclude coverage for said accident.
The underlying facts are undisputed. On January 14, 1973 Richard A. Fisher was the operator of a tow truck owned by Polizzi Towing Corp. (Polizzi), which vehicle was insured by Hartford Accident & Indemnity Company (Hartford). Polizzi's tow truck was involved in an accident while towing an oil truck owned by Wellen Oil Co. (Wellen) and insured by Travelers Insurance Company (Travelers). As a result of the accident various claims and lawsuits for personal injuries and property damage were made and instituted against Polizzi and Fisher. Hartford demanded that Travelers agree that its policy also provided coverage for Polizzi and Fisher, which demand Travelers refused. A lawsuit against Polizzi and Fisher was tried on the issue of liability only, and resulted in a verdict against Polizzi and Fisher. Subsequently, Hartford which had alone defended the lawsuit, settled all claims for damages arising out of the accident. The parties have stipulated, for purposes of this action, that the Wellen vehicle neither contributed to, nor was involved in, the actual impact.
The instant action was commenced by Hartford against Travelers seeking a judgment declaring that at the time of the accident between Hartford's insured and the third vehicle, that Hartford's insured was also entitled to coverage under the Travelers policy insuring the Wellen vehicle. Travelers filed an answer contending that (1) neither Polizzi nor Fisher were insureds under the Travelers policy; (2) the settlements entered into by Hartford on behalf of Polizzi were made without Travelers consent, and (3) the settlements were unreasonable in amount. Hartford replied, contending that Travelers by its actions was either estopped or had waived its right to challenge the validity or reasonableness of the settlements. Hartford now moves for summary judgment solely on the issue of policy coverage under the Travelers policy.
*338 We first consider whether the act of towing is a "use" of the towed vehicle within the meaning of the Travelers policy which states:
COMPREHENSIVE AUTOMOBILE LIABILITY INSURANCE COVERAGE PART
I. Coverage C  Bodily Injury Liability
Coverage D  Property Damage Liability
The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of
Coverage C. bodily injury or
Coverage D. property damage
to which this insurance applies, caused by an occurrence and arising out of the ownership, maintenance or use, including loading and unloading, of any automobile, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements.
II. Persons Insured
Each of the following is an insured under this insurance to the extent set forth below:
* * * * * * * *
(c) any other person while using an owned automobile or a hired automobile with the permission of the named insured, provided his actual use thereof is within the scope of such permission * * *. (d) Any other person or organization but only with respect to his or its liability because of acts or omissions of an insured under (a), (b) or (c) above.
Specifically, the issue is whether the act of towing comes within the scope of the Travelers policy providing coverage for accident "arising out of the ownership, maintenance or use" of the Wellen vehicle. Although there is no New Jersey authority which addresses the act of towing in this respect, the term "use" has been judicially interpreted in the context of insurance coverage disputes on numerous occasions. In Indemnity Ins. Co. v. Metropolitan Cas. Ins. Co. of New York, 33 N.J. 507 (1960), the court said:

*339 * * * the use of an automobile denotes its employment for some purpose of the user; the word `operation' denotes the manipulation of the car's controls in order to propel it as a vehicle. Use is thus broader than operation * * *. One who operates a car uses it, * * * but one can use a car with out operating it. An automobile is being used, for example, by one riding in it although another is driving. [at 513]
The term "use" is broad and includes a wide variety of situations. In Westchester Fire Ins. Co. v. Continental Ins. Cos., 126 N.J. Super. 29 (App. Div. 1973), aff'd o.b. 65 N.J. 152 (1974), the court held that an accident arose out of the use of an automobile where a bicyclist was injured by a stick thrown by a passenger from a moving automobile. In Unsatisfied Claim and Judgment Fund Bd. v. Clifton, 117 N.J. Super. 5 (App. Div. 1971), a gas station employee engaged in repairing an insured's car injured a friend of his who had been helping him guide the car onto a hydraulic lift. The court held that the employee's use was a permitted one covered by the insured's policy. In Selected Risks Ins. Co. v. Nationwide Mutual Ins., 133 N.J. Super. 205 (App. Div. 1975), a garage owner was examining a customer's vehicle when it suddenly lurched forward, killing the garage owner and injuring the customer's wife. The court held that the estate of the deceased was covered under the omnibus clause in the customer's policy, since the examination of the auto was a permitted use under the customer's policy. In Motor Club Fire & Cas. Co. v. New Jersey Mfrs. Ins. Co., 73 N.J. 425, 432 (1977), cert. den. 434 U.S. 923, 98 S.Ct. 402, 54 L.Ed.2d 281 (1977) our Supreme Court noted that the meaning and scope of the coverage provided "must be considered in light of our courts' expansive view of the coverage provided by the standard omnibus clause * * *."
Courts in other jurisdictions which have considered the issue here involved have generally adopted a broad interpretation of the term "use" and have held the act of towing to be a "use" of the towed vehicle within the meaning of the standard omnibus clause.
*340 In State Automobile Mut. Ins. Co. v. State Farm Mut. Ins. Co., 456 F.2d 238 (6 Cir.1972), the court held that the driver of a towing vehicle was also "using" the towed vehicle. There, plaintiff was the insurer of an automobile which was towing a jeep insured by the defendant. Both vehicles crossed the center line on a highway and collided with another vehicle. Defendant carrier contended that the towed vehicle which it insured did not cause or contribute to the accident and therefore there was no coverage under its policy. Both vehicles were in common ownership. The court, in rejecting defendant carrier's contention, noted that both policies provided coverage for accidents "arising out of the ownership, maintenance, or use" of the automobile, and that such coverage "is about as general and broad as could be * * *." 456 F.2d at 239. The court further noted that the accident arose out of the insured's use of both vehicles, and that it was immaterial that the towing vehicle rather than the towed vehicle collided with the tractor trailer, since the court concluded that the automobile and the jeep constituted a unit which the insured of both companies operated on the wrong side of the road causing the accident. The court referred to its earlier decision in Insurance Co. of North Amer. v. Royal Indem. Co., 429 F.2d 1014 (6 Cir.1970). There, separate policies of insurance were issued by different companies on a tractor and trailer which collided with another vehicle. The court affirmed the entry of judgment against the insurer of the trailer in the amount of its prorated liability, despite the fact that the trailer did not figure in the accident other than being part of the tractor-trailer unit.
In Industrial Indem. Co. v. Continental Cas. Co., 375 F.2d 183 (10 Cir.1967), an oil company was having work performed on its site. A cement company truck was unable to cross a muddy area to reach a well site and was towed by a caterpillar tractor owned by a construction company. After traversing the muddy section of the site, the driver of the truck left his vehicle and disconnected the tow chain between *341 the two vehicles. However, before he could withdraw from between the vehicles, the tractor slipped back against the truck, pinning the driver against it. After paying the injured driver's claims, Industrial, the tractor's insurer, commenced an action against Continental, the insurer of the truck, to determine whether Continental's policy covering the truck also extended coverage to the driver of the tractor. Continental's policy defined "insureds" to include any person "using" an owned automobile with the permission of the named insured. The Court of Appeals affirmed the trial court which had held that the driver of the tractor was using the truck within the meaning of Continental's policy and declared the tractor operator to be an insured under the Continental policy.
A somewhat different analysis has been advanced in other jurisdictions while achieving the same result. In American Fire & Cas. Co. v. Allstate Ins. Co., 214 F.2d 523 (4 Cir.1954), an automobile which was towing a jeep crossed the center line of a highway and struck a third vehicle. The automobile and the jeep were in common ownership. Allstate, the insurer of the automobile, paid the damages recovered by injured third parties, and brought suit to compel contribution from American, the insurer of the jeep. The policy covering the jeep provided coverage for accidents arising "out of the ownership, maintenance, or use" of the jeep. American contended that since the jeep was an automobile capable of self-propulsion and was being transported without power of its own in tow of the automobile, the accident did not arise out of its ownership, maintenance or use. The court held that the jeep was being used by the driver of the automobile at the time of the accident, and premised its finding of coverage on the fact that this type of accident was one within the contemplation of the parties and was clearly a foreseeable event.
* * * The jeep was moving on the road by means of its own running gear and although it was not employing its own power unit, it was subject to the vicissitudes and dangers of travel on *342 the public highway and was being propelled under circumstances not infrequently encountered. It cannot be said that the employment of the vehicle in such a manner was so unusual as not to have been within the contemplation of the parties to the insurance contract, and it would violate the usual rule of liberal interpretation of such an agreement in favor of the insured, if it should be held that a car being transported under the circumstances was not actually in use. [214 F.2d at 525]
Similar reasoning was adopted in Smith v. Travelers Indem. Co., 32 Cal. App.3d 1010, 108 Cal. Rptr. 643, 646 (D. Ct. App. 1973), where the court held that the act of towing a horse trailer behind a pickup truck was a "use" of the trailer. The court noted that the horse trailer was being used in the manner contemplated by the parties, that is, by towing it behind another vehicle.
In Dairyland Ins. Co. v. Drum, 568 P.2d 459 (1977), the Colorado Supreme Court held that the "use" clause in an automobile insurance policy included the act of towing. There, a vehicle had become disabled and was parked at the side of the road. The driver of the vehicle asked a friend for assistance in towing it back to town. The disabled vehicle was connected to the towing vehicle by tow chain. The towing vehicle and the disabled vehicle attempted to make a U-turn on the travelled portion of the highway. During this maneuver, the driver of the disabled vehicle was steering his own vehicle, although without motive power. The driver of the towing vehicle was unable to complete the U-turn, stopped his vehicle and left the disabled vehicle blocking the highway. A third vehicle collided with the rear of the disabled vehicle. The driver of the towing vehicle brought suit against the insurer of the disabled vehicle alleging that he was "using" the disabled vehicle by his act of towing it and therefore qualified as an insured under the towed vehicle's policy. In imposing coverage the court noted that "while he was towing Miller's truck, Drum was a `person * * * using the vehicle' and came within the ambit of coverage * * *." 568 P. 2d at 461. The court *343 further noted (at 462) that "[a]ccidents arising from towing situations are neither rare nor unforeseeable * * *."
In Hall v. United States Fid. & Guar. Co., 107 Ohio App. 13, 155 N.E.2d 462 (Ct. App. 1957), the court held that the act of towing a jeep was a "use" of that jeep within the meaning of the omnibus clause, and granted coverage to the operator of the towing vehicle in a suit by an individual who had been squeezed between the jeep and the towing vehicle while waiting to attach a tow line between them.
Travelers relies solely on the case of Esfeld Trucking, Inc. v. Metropolitan Ins. Co., 193 Kan. 7, 392 P.2d 107 (Sup. Ct. 1964) to support its contention that the act of towing a vehicle is not a use of that vehicle. There, a truck had been unloaded at a job site and was being towed by a winch connected to a caterpillar tractor owned by another contractor when the truck struck and injured a third party. The Supreme Court of Kansas, two justices dissenting, held that the operator of the caterpillar tractor was not using the towed truck since the towed vehicle was not being employed for some purpose or object of the user.
Esfeld is readily distinguishable from the instant case. The Kansas court rejected the imposition of liability, asserting that the towed vehicle, having been theretofore unloaded, was no longer being employed for any purpose or object of the towing vehicle, thus being of no further benefit to the owner of the towing vehicle. The Kansas court was confronted with a situation quite different from that presented here, i.e., a commercial towing arrangement. Another and perhaps more pertinent distinction lies in the fact that Kansas, in contrast to New Jersey, applies a narrow interpretation to the "use" clause in automobile insurance policies. Furthermore, the Esfeld court noted that a narrow construction was particularly appropriate since the action was between two insurance carriers and not individuals. This latter distinction has been specifically rejected by the courts of this State. State Farm Mut. Auto. Ins. Co. v. Travelers Ins. Co., *344 57 N.J. 174, 179 (1970). Selected Risks Ins. v. Nationwide Mut. Ins., supra 133 N.J. Super. at 212.
The logical rationale distilled from the decisions in other jurisdictions is that the towing of a vehicle is an employment of that vehicle in a manner clearly within the contemplation of the parties to an insurance contract.
The towing of a vehicle is neither a rare nor unforeseeable event. Quite to the contrary, the prospect of vehicular breakdowns occurring from a multitude of causes requiring the need for towing is entirely within the realm of reasonable foreseeability by owners and operators of vehicles on our roadways. It is well settled that purchasers of insurance "are entitled to the broad measure of protection necessary to fulfill their reasonable expectations." Kievit v. Loyal Protect. Life Ins. Co., 34 N.J. 475, 482 (1961). Accord, Westchester Fire Ins. Co. v. Continental Ins. Cos., supra, 126 N.J. Super. at 36.
This court concludes that the act of towing, as presented by the facts at bar, is a use of the towed vehicle within the meaning of the Travelers policy. Clearly, the Wellen vehicle was being employed for a purpose of both Wellen and Polizzi at the time of the accident. Indemnity Ins. Co. v. Metropolitan Cas. Ins. Co. of N.Y., supra. This interpretation of the policy provision is in keeping with the general rule of construction that "where the policy provision under examination relates to the inclusion of persons other than the named insured within the protection afforded, a broad and liberal view is taken of the coverage extended * * *." Mazzilli v. Acc. & Cas. Ins. Co. of Winterthur, 35 N.J. 1, 8 (1961). See also, Tooker v. Hartford Acc. & Indem. Co., 128 N.J. Super. 217, 223 (App. Div. 1974).
Having determined that Polizzi and Fisher were "using" the Wellen vehicle, we must then consider the validity of the exclusionary clause in the Travelers policy in light of N.J.S.A. 39:6-46(a).
*345 The exclusionary clause in the Travelers policy provides:
* * * None of the following is an insured:
(v) any person while employed in or otherwise engaged in duties in connection with an automobile business, other than an automobile business operated by the named insured * * *.

V Additional Definitions
When used in reference to this insurance (including endorsements forming a part of the policy):
`automobile business' means the business or occupation of selling, repairing, servicing, storing or parking automobiles; * * *
In Selected Risks Ins. Co. v. Zullo, 48 N.J. 362 (1966), the Supreme Court enunciated the principle that there can be no departure in automobile insurance policies from the omnibus coverage mandated by the Motor Vehicle Responsibility Law, N.J.S.A. 39:6-46. The Motor Vehicle Responsibility Law requires that all liability insurance policies issued in this State shall
* * * insure the insured named therein and any other person using or responsible for the use of any such motor vehicle with the express or implied consent of the insured, against loss from the liability imposed upon the insured or other person by law, for injury to or the death of a person * * * growing out of the maintenance, use or operation of the motor vehicle in the United States of America. [N.J.S.A. 39:6-46(a)]
In Willis v. Security Ins. Group, 53 N.J. 260 aff'g 104 N.J. Super. 410 (Ch. Div. 1968), the court voided an endorsement which excluded from its omnibus coverage individuals driving the named insured's car with his permission where such persons had available valid and collectible insurance under their own policies.
In Kish v. Motor Club of Amer. Ins. Co., 108 N.J. Super. 405 (App. Div. 1970), certif. den. 55 N.J. 595 (1972), the court invalidated an exclusionary clause purporting to exclude death or injury benefits "to the named insured, or any insured, or the spouse or minor children of the named insured or any insured, whether related by blood or adoption, *346 unless the policy is specifically endorsed to cover the same * * *." 108 N.J. Super. at 408.
In Unsatisfied Claim and Judgment Fund Bd. v. Clifton, 117 N.J. Super. 5 (1971), the Appellate Division following Zullo, supra, held that to the extent a clause excluding garagemen from coverage has the effect of limiting the omnibus coverage required by N.J.S.A. 39:6-46, the clause is invalid. There, a customer left his automobile at a service station to have the brakes repaired. A service station employee asked a friend to assist him while he guided the automobile onto a hydraulic lift. The car slipped and pinned the employee's friend to the wall. Neither the service station operator nor his employee had liability insurance and were represented by the Unsatisfied Claim and Judgment Fund Board, which brought an action for a declaratory judgment seeking to compel the customer's insurer to defend the service station operator. The customer's insurer denied coverage relying upon its exclusionary clause in the customer's automobile insurance policy which clause provided in pertinent part as follows:
EXCLUSIONS. This policy does not apply: Under the Liability, Medical Expense and Accidental Death Benefit Coverages, * * * (g) to any automobile or trailer while maintained or used by any person while such person is employed or otherwise engaged in the automobile business, but this exclusion does not apply to the maintenance or use of an owned automobile (1) by the named insured or a relative, or (2) by any other insured in an automobile business in which the named insured has an interest as proprietor or partner * * *. [117 N.J. Super. at 7-8]
The court held that the exclusionary clause constituted an invalid attempt to limit the scope of protection intended to be afforded to persons using the vehicle.
Finally, in Selected Risks Ins. v. Nationwide Mut. Ins., supra, the court held invalid an automobile business exclusionary clause which conflicted with the statutorily required omnibus clause. The exclusionary clause there provided in pertinent part:

*347 EXCLUSIONS
There shall be no protection afforded:
(2) under Coverages C(1), C(2), D(1) and D(2), to any person or organization or to any agent or employee thereof, operating an automobile repair shop, public garage, sales agency, service station or public parking place, with respect to any occurrence arising out of the operation thereof * * *.
[133 N.J. Super. at 210]
Travelers reliance on Providence Wash. Ins. Co. v. Glens Falls Ins. Co., 114 N.J. Super. 350 (Ch. Div. 1971), is misplaced. Providence dealt with the interpretation of an exclusionary clause rather than with its validity. In Unsatisfied Claim and Judgment Fund Bd. v. Clifton, supra, the Appellate Division after specifically referring to the trial judge's reliance on Providence, reversed, stating:
We deem it unnecessary to consider the correctness of the trial court's interpretation since we conclude that the exclusionary clause, thus construed, constituted an invalid attempt to limit the scope of protection intended to be afforded to persons using the vehicle with permission of the named insured. [117 N.J. Super. at 8]
Travelers contends that the automobile business exclusionary clause is intended to protect it against the greater risks involved in the automobile business. However, in view of this court's construction of the "use" provision involved in the case at bar, the exclusionary clause in the Travelers policy must yield to the public policy of this State as expressed in the Motor Vehicle Responsibility Law (117 N.J. Super. 9-10); and is therefore invalid. This view is in accord with the clear legislative intent of that law as interpreted by the Supreme Court in Selected Risks Ins. Co. v. Zullo, supra, and its progeny.
Plaintiff's motion for summary judgment declaring that at the time of the accident in question Polizzi and Fisher were also insured under the Travelers policy is granted.